**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

LISA A. WEAVER,

        Plaintiff,

v.                                        Case No.: 3:09-cv-00370

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,

        Defendant.

**MEMORANDUM OPINION**

This action seeks a review of the decision of the Commissioner of the Social Security Administration denying plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433 and 1381-1383f.  This case is presently before the Court on the parties' Motions for Judgment on the Pleadings. (Docket Nos.13 and 17).   Both parties have consented in writing to a decision by the United States Magistrate Judge. (Docket Nos. 8 and 9).

The Court has fully considered the evidence and the arguments of counsel.  For the reasons set forth below, the Court finds that the decision of the Commissioner should be affirmed.

**I.     Introduction**

Plaintiff, Lisa A. Weaver, filed applications for DIB and SSI on February 7, 2006 claiming that she had been disabled since December 30, 2005 due to chronic obstructive

pulmonary disease (COPD); congestive heart failure; sleep apnea; spur in lungs; depression and nerves. (Tr. at 56-60, 69). The Social Security Administration (SSA) initially denied the claims on May 11, 2006 and, upon reconsideration, again denied them on July 22, 2006. (Tr. at 18). Thereafter, plaintiff filed a written request for a hearing, which was conducted on November 5, 2007 by the Honorable Algernon W. Tinsley, Administrative Law Judge (ALJ). (Tr. at 516-573). By decision dated February 22, 2008, the ALJ determined that plaintiff was not entitled to benefits. (Tr. at 18-27). The ALJ's decision became the final decision of the Commissioner on February 12, 2009 when the Appeals Council denied plaintiff's request for review. (Tr. at 6-8). Plaintiff timely filed the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. §405(g). (Docket No. 2).

Under 42 U.S.C. § 423(d)(5) and 1382c(a)(3)(H)(i), a claimant seeking disability benefits has the burden of proving a disability. See *Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. 423(d)(1)(A).

The Social Security Regulations establish a five step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied. 20 C.F.R. §§404.1520, 416.920. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§404.1520(c), 416.920(c). If severe impairment is

present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§404.1520(d), 416.920(d).  If the impairment does, then the claimant is found disabled and awarded benefits.  However, if the impairment does not, the adjudicator must determine the claimant's residual functional capacity (RFC), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments.  After making this determination, the next step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§404.1520(e), 416.920(e).  If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to prove, as the final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences.  *Id.* §§404.1520(f), 416.920(f); See also, *McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983).  The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy.  *McLamore v. Weinberger,* 538 F.2d. 572, 574 (4th Cir. 1976).[1]

---

[1] When a claimant alleges a mental or psychiatric impairment, the SSA "must follow a special technique at every level in the administrative review."  20 C.F.R. §§404.1520a, 416.920a(a).  In this case, plaintiff alleged psychiatric impairments of depression and nerves.  The ALJ applied the special technique in evaluating plaintiff's psychiatric impairments, and his decision incorporated the pertinent findings and conclusion. (Tr. at 21). Plaintiff has not complained about the ALJ's application of the special technique or his conclusion that plaintiff's psychiatric impairments were non-severe. Accordingly, the Court will not address these issues in this opinion.

In this case, the ALJ determined that plaintiff satisfied the first step of the process, because she had not engaged in gainful activity since the date of the alleged onset of disability. (Tr. at 20, Finding No. 2).  Likewise, plaintiff survived the second step of the process when the ALJ found plaintiff to have severe impairments of COPD, sleep apnea, back pain and obesity.  (Tr. at 20, Finding No. 3).  The ALJ recognized that plaintiff had other impairments, including depression and anxiety, but these were found to be non-severe. (*Id.*) At the third step in the evaluation, the ALJ found that plaintiff's impairments, separately and in combination, did not meet or equal the level of severity of any impairments listed in Appendix 1. (Tr. at 22, Finding No. 4).  The ALJ concluded from the evidence that the plaintiff had a RFC to "lift/carry 50 pounds occasionally and 25 pounds frequently.   Non-exertionally, she should only occasionally crawl and never climb ladders/ropes/scaffolds.   She should also avoid fumes, odors, dusts, gases, poor ventilation, etc.; and avoid hazards (machinery, heights, etc.)." (Tr. at 22, Finding No. 5).  At step four, the ALJ found that the plaintiff was unable to perform any past relevant work.  (Tr. at 25, Finding No 6).   However, considering plaintiff's age, education, residual functional capacity, and work experience, combined with the testimony of the vocational expert, the ALJ concluded that plaintiff was capable of making "a successful adjustment to other work that exists in significant numbers in the national economy," including work as a cashier, hand packager, information clerk, order clerk, or routing clerk.  (Tr. at 26, Finding No. 10).  On this basis, the ALJ found that the plaintiff was not disabled, as defined in the Social Security Act, and was not entitled to benefits. (Tr. at 27).

## II.    Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence.

In *Blalock v. Richardson*, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This Court is not charged with conducting a *de novo* review of the evidence.  Instead, the Court's function is to scrutinize the totality of the record and determine whether substantial evidence exists to support the conclusion of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  If substantial evidence exists, then the Court must affirm the decision of the Commissioner "even should the court disagree with such decision." *Blalock v. Richardson, supra* at 775.

A careful review of the record reveals that the decision of the Commissioner is based upon an accurate application of the law and is supported by substantial evidence.

### III.    Plaintiff's Background and Relevant Medical Records

Plaintiff was born in 1968 and was 37 years old at the time she applied for disability benefits.  (Tr. At 65).  She graduated from high school in 1986 and was employed primarily as a home health caregiver until December 2005, when she stopped working. (Tr. at 70, 74-76).  Plaintiff is able to read, speak, and understand English.  (Tr. at 69).

From a review of the medical records, plaintiff received psychological evaluations in 1981 and 1983 related to her poor performance at school.  In 1983, plaintiff was assessed to have a full scale I.Q. of 78 and a performance I.Q. of 86. (Tr. 127-138).  Plaintiff received resource room assistance in all academic courses and graduated from high school with a 2.0 average.  (Tr. At 125).

Plaintiff started treating with Dr. Robert Tayengco, an internal medicine specialist in Mason, West Virginia, in approximately 1997. (Tr. at 524-525, 557).  Plaintiff's medical records from Dr. Tayengco's office include notes of appointments starting in May 1999 and ending in late August 2007, approximately two and half months before the ALJ's hearing. (Tr. at 261-291, 484-485).   These notes indicate that plaintiff primarily treated with Dr. Tayengco for weight management until 2001, when she developed gynecological concerns. She underwent a total abdominal hysterectomy in October 2001.   In February 2002, plaintiff first complained of symptoms of depression, which Dr. Tayengco treated with Wellbutrin.  (*Id.* at 286). Depression appeared to be her primary medical problem until 2003, when she began to complain of back and chest pain.  (*Id.* at 278-280).

In March 2003, plaintiff was admitted to Pleasant Valley Hospital with shortness of breath, congestion and cough.  (Tr. at 156).  She was treated by Dr. Tayengco with IV antibiotics and nebulizer treatments and was told to quit smoking.  Dr. Tayengco diagnosed plaintiff with COPD and left lingular pneumonia.  (Tr. at 155).  In late July 2003, plaintiff was again admitted to the hospital with an exacerbation of COPD and bilateral pneumonia.  (Tr. at 166).

In August 2004, plaintiff began to complain of migraine headaches.  (Tr. at 408). She stated that she had a long history of migraines. (*Id.*).  By March 2005, her headaches continued, and she also complained of fatigue.  She was diagnosed with possible sleep apnea.  (Tr. at 275).  Dr. Tayengco referred plaintiff to Dr. William Beam, a Diplomate of the American Board of Sleep Medicine, who performed a complex polysomnographic evaluation of plaintiff in April 2005.  (Tr. at 374-375, 385-386).  Dr. Beam diagnosed plaintiff with symptomatic obstructive sleep apnea with significant hypoxemia and recommended a trial of nasal C-PAP and weight loss.  (Tr. at 385-386).  On follow-up in

May, Dr. Beam concluded that the C-PAP was helping plaintiff.  He determined that her normal sleep efficiency was 87%. (Tr. at 374).

In December 2005, Dr. Tayengco diagnosed plaintiff with "COPD exacerbation—failed outpatient treatment" and placed her on intravenous antibiotics. (*Id.* at 272).   On January 23, 2006, Dr. Tayengco noted that plaintiff's chief complaints were a cough and chest tightness.  A CT scan did not reveal any acute infiltrate, congestive heart failure or masses.  (*Id.* at 269).  Her oxygen saturation was 97% on room air.  Dr. Tayengco felt that plaintiff could not work at that time, and he scheduled plaintiff for a complete pulmonary function study.   On January 24, 2006, Dr. Tayengco performed pulmonary function studies and diagnosed a "minimal obstructive lung defect." (Tr. at 347).  Oximetry studies performed on April 13, 2006 revealed an average oxygen saturation of 96% with C-PAP. (Tr. at 337).  A chest x-ray taken on July 24, 2006 demonstrated fibrotic changes, but no acute changes or infiltrates.  (Tr. at 326).   Dr. Tayengco diagnosed bronchitis and treated plaintiff with intravenous antibiotics. (*Id.*).   Another x-ray taken in August showed essentially clear lungs, but Dr. Tayengco again prescribed antibiotics. (Tr. at 318-320).  He referred plaintiff to Dr. Sanpal Mavi for further management of her COPD. (Tr. at 265).

Also in 2006, plaintiff was evaluated by Dr. John Todd, a licensed psychologist, at the request of the SSA.  Dr. Todd found that plaintiff suffered from generalized depression and anxiety, but stated that claimant "alleges no mental functioning problems and at CE mental status was all WNL except mild social def.  Able to perform all ADL functions through somewhat restricted by physical complaints.  Limitations due to mental D/O are considered to be non-severe."  (Tr. at 239).  In May 2006, the SSA additionally referred plaintiff to Dr. Rafael Gomez for a residual functional capacity assessment. (Tr. at 241-248) Dr. Gomez felt that plaintiff was not entirely credible in her complaints.  He indicated that

she had diagnoses of COPD and sleep apnea, but her blood gases on room air were normal, as was her chest x-ray.  Dr. Gomez reduced plaintiff to "medium work with postural limitations on the basis of her obesity." (Tr. at 246).

On February 9, 2007, Dr. Sanpal Mavi examined plaintiff at the request of Dr. Tayengco.  (Tr. at 467-468).  Dr. Mavi diagnosed plaintiff with multiple pulmonary nodules by history, COPD, acute bronchitis and sleep apnea.  (*Id.*)  Dr. Mavi scheduled plaintiff for a CT scan and advised her to continue on her medications for COPD, stop smoking, stay active and lose weight.[2]  The CT scan revealed no pulmonary abnormality.  On follow-up, Dr. Mavi recommended that plaintiff continue with her COPD medications and C-PAP.  He reassured her that she had no worrisome findings on the CT scan and scheduled her to return for routine follow-up in four or five months. (Tr. at 464).

Dr. Tayengco again referred plaintiff to Dr. William Beam in September 2007 for an evaluation of her symptomatic COPD.  Dr. Beam performed a complete examination and concluded that plaintiff had symptomatic COPD with a component of restriction due to chest wall mechanics and obstructive sleep apnea.  He recommended a cardiac assessment to rule out occult coronary disease and pulmonary function tests, including lung volumes, DLCO, and bronchodilator response. (Tr. at 483).  The cardiac assessment showed no coronary or valvular disease, and the pulmonary function tests reconfirmed a "minimal obstructive airways disease-peripheral airway."  (Tr. at 456-459). On October 2, 2007, Dr. Beam documented his impression that plaintiff had COPD with asthmatic component, which was "well compensated on current medications," and obstructive sleep apnea, which was "compensated on nasal C-PAP."  (Tr. at 492).  He advised plaintiff to continue her

---

[2] Her weight at this time was 271 pounds.

current medications, lose weight, and return to Dr. Tayengco for general medical care.  Dr. Beam only planned to see plaintiff on an "as needed" basis.  (Tr. At 493).

On October 31, 2007, Dr. Tayengco completed a residual functional capacity assessment in which he indicated that plaintiff could perform only sedentary work. (Tr. at 486-490).  He diagnosed her with severe COPD and moderate osteoarthritis.  (*Id.*).

## IV.   Plaintiff's Challenges to the Commissioner's Decision

Plaintiff asserts three failures on the part of the Commissioner that would support a reversal of his decision and either a remand or an allowance of benefits.  First, plaintiff contends that the ALJ failed to consider plaintiff's exacerbations of COPD when determining whether that impairment met or equaled any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Second, plaintiff claims that the ALJ ignored plaintiff's subaverage I.Q., which, at a minimum, should have been determined to be a severe impairment.  Finally, plaintiff argues that the ALJ improperly rejected the opinion of plaintiff's treating physician without articulating a good reason for doing so.

In response, the Commissioner maintains that plaintiff's COPD did not descriptively meet the criteria of Listing 3.02 (A) related to chronic pulmonary insufficiency; therefore, the ALJ correctly determined that plaintiff's COPD did not merit a finding of disability.  Secondly, the Commissioner contends that the records in evidence do not support a conclusion that plaintiff's mental impairment is a disability or a severe impairment that significantly limits her ability to work.  Finally, the Commissioner argues that the ALJ fully discussed the medical evidence and provided a substantial factual basis for rejecting the opinion of Dr. Robert Tayengco, plaintiff's treating physician.

### V.      Analysis

### A.  Plaintiff's Exacerbations of COPD Under the Listing

At the second step of the sequential evaluation, the ALJ was responsible for determining if plaintiff suffered from a severe impairment.  20 C.F.R. §§404.1520(c), 416.920(c).  If a severe impairment existed, the evaluation moved to the third step, and the ALJ was required to ascertain whether the impairment met or equaled any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing").  *Id.* §§404.1520(d), 416.920(d).  The Listing "describes, for each of the major body systems impairments that [the SSA] consider[s] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Id.* §§ 404.1525(a), 416.925 (a).  If plaintiff demonstrated an impairment that met the severity requirements of the same or similar impairment contained in the Listing, then the evaluation process ended at that step; the plaintiff should have been adjudged disabled and awarded benefits regardless of her vocational background.

Plaintiff avers that the ALJ incorrectly construed the Listing in relation to plaintiff's impairment of COPD, because the ALJ failed to consider the acute exacerbations of COPD regularly suffered by plaintiff.  According to plaintiff, the Listing does not specifically outline severity requirements pertaining to COPD; therefore, the ALJ should have analyzed plaintiff's respiratory impairment under the sections on episodic respiratory diseases, such as asthma, cystic fibrosis, or bronchiectasis, as these would take into account periodic and acute respiratory attacks.  (Pl. Br. at 6-7).  However, as the Commissioner points out, the Listing actually does include elements pertinent to COPD, ***due to any cause***, under Section 3.02 (A).  In order to make a finding of disability in cases of COPD, Section 3.02 (A) requires that the claimant's FEV1 be equal to or less than the values contained in Table

1, which are based upon the height of the claimant.[3]  As plaintiff is 64-65 inches in height, Table 1 requires that her FEV1 be equal to or less than 1.25 (L, BTPS).   In fact, the record reflects that plaintiff's lowest documented FEV1 was 2.53, more than double the "disabled" value.  (Tr. at 346, 460).[4]

To qualify for benefits on account of an impairment contained in the Listing, plaintiff must present medical findings that meet **all** elements of the Listing for that impairment.  *Sullivan v. Zembly,* 493 U.S. 521 (1990).   In the case of COPD, the FEV1 measurement is the primary element by which disability is determined.   Accordingly, the ALJ properly concluded that plaintiff did not meet or equal the severity criteria of the COPD impairment contained in the Listing.

### B.  Assessment of Plaintiff's Intelligence Level

In relation to her intelligence, plaintiff makes two arguments.  First, she contends that the ALJ erred by not considering her "significantly subaverage I.Q." as an impairment that met the elements of Section 12.05 of the Listing, requiring an immediate finding of disability.   Second, she asserts that after ignoring the elements of the Listing, the ALJ compounded his error by failing to factor plaintiff's low I.Q. into an individual assessment of her disability.  The Court finds that these arguments are without merit.

The records in evidence confirm two instances on which plaintiff underwent intelligence testing.   In 1981, when plaintiff was in the seventh grade, she took the Weschsler Intelligence Scale for Children and achieved a performance, verbal and full scale I.Q. score of 85 or higher. (Tr. at 137).  She repeated the testing two years later and scored

---

[3] FEV1 is a measurement of the reported one-second forced expiratory volume.
[4] Even if plaintiff's assertion was correct and Section 3.03B, 3.04B, or 3.07B was applicable, plaintiff's medical records do not appear to contain sufficient documentation to support a factual conclusion that plaintiff suffered from "attacks" at least once every 2 months or six times per year as required by those sections.

a performance, verbal, and full scale I.Q. of 73 or higher.  (Tr. at 128).  Plaintiff contends that based upon these scores and her high school grades, which ranged from A's to F's (Tr. at 125), the ALJ should have concluded that plaintiff's subaverage intelligence met the elements of Section 12.05 of the Listing.

To qualify as disabled under Section 12.05 of the Listing, which is entitled "mental retardation," plaintiff must (1) produce a valid verbal, performance or full scale I.Q. of 59 or less, or (2) substantiate an I.Q score of between 60 and 70 with evidence of a concurrent physical or mental impairment that imposes an additional or significant work-related limitation of function. Plaintiff's I.Q. was never documented at 70 or below; therefore, she cannot meet one of the threshold elements of Section 12.05.  As stated above, the Listing will not be considered as proof of disability unless the claimant can demonstrate all of the elements of a listed impairment.

Aside from the Listing, plaintiff asserts that her low I.Q. constituted a severe impairment, which should have been more fully considered by the ALJ when determining her ability to work.  In fact, the ALJ did address and consider plaintiff's level of intelligence and education when evaluating her RFC.  (Tr. at 23-24).  He confirmed plaintiff's testimony that she was placed in special education classes at school due to ADHD and had taken I.Q. tests in which the resulting scores were below 72 and 74. (*Id.*)[5]  However, the ALJ simply did not find plaintiff to be credible when she argued that her intelligence level substantially hindered her ability to work.  (Tr. at 24-25, 27).

"In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence, make determinations as to credibility, or substitute its own judgment for that of the Commissioner."  See *Hays v. Sullivan,* 907 F.2d. 1453, 1456 (4th Cir. 1990).

---

[5] The ALJ noted, however, that these I.Q. tests were not in evidence and could not be proven.  (Tr. at 27).

Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler,* 739 F.2d 987, 989-990 (4th Cir. 1984), citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D.Va. 1976).

The record in this case reflects that plaintiff's intelligence level did not significantly impede her ability to tackle mentally challenging duties in her prior employment positions and supports the conclusion that she functioned at a level that belied her childhood I.Q. scores. As a home health caregiver, plaintiff was required to shop, pay bills, assist with physician visits, and complete daily logs, all of which she apparently accomplished in a satisfactory manner as she was employed in that capacity for at least seven years. (Tr. at 76, 78). In addition, a diagnostic evaluation of plaintiff performed on December 21, 2005 by Associates in Psychology and Therapy substantiated that plaintiff completed high school without repeating any grades; her speech was relevant and clear; her judgments, concentration, insights, and memory were all normal. (Tr. at 203-206). The paperwork completed by plaintiff to apply for benefits and her testimony at the hearing were both reasoned and articulate. Moreover, she did not raise her intellectual level as an impairment to employment when asked by the ALJ and only discussed it when prompted by her counsel. (Tr. at 529-530, 542-544). These facts, in conjunction with the ALJ's expressed reservations regarding plaintiff's credibility and the lack of documentation supportive of a Section 12.05 impairment, constitute substantial evidence that plaintiff's intelligence level was not a significant factor to her disability assessment.

### C. Weight of Opinion of Treating Physician

The ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. §§

404.1527(d) and 416.927(d); *See* also *DeBerry v. Astrue,* 2010 WL 3703222 (W.D.Va.). "A treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." 20 C.F.R. §§ 404.1527(d)(2) and 16.927(d)(2). When considering the weight to give a treating physician's opinion, the ALJ must consider a number of factors, including (1) whether the physician has examined the plaintiff; (2) the existence of an ongoing physician-patient relationship; (3) the diagnostic and clinical support for the opinion; (4) the opinion's consistency with the record; and (5) whether the physician is a specialist. 20 C.F.R. §§ 404.1527(d) and 416.927(d); *DeBerry v. Astrue,* 2010 WL 3703222 at 5 (W.D.Va.). The opinion of the treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). If the ALJ discounts the opinion of a treating physician, the ALJ must explain the reasons for making that determination. *DeBerry v. Astrue, supra.*

Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Tayengco, who assessed plaintiff's RFC in October 2007 and concluded that she was only capable of work at a sedentary level. Plaintiff argues that "[b]y failing to articulate how he arrived at his conclusion the ALJ's decision does not allow subsequent reviewers to understand how he arrived at his total rejection of the opinion of the treating doctor." (Pl. Br. at 11). To the contrary, the Court finds that the ALJ simply and succinctly explained his reason for discounting Dr. Tayengco's RFC assessment, stating:

> A pulmonary function test in October 2007 suggested deconditioning as a cause of symptoms and Dr. Beam noted that her COPD and obstructive sleep apnea was well compensated on current medication and CPAP. In fact, the only physician to give her a poor prognosis is Dr. Tayengco and this is not followed by any evaluation to support this finding. . . As for the functional capacity evaluation of Dr. Tayengco,

> who limited her to sedentary level work. . . .based on severe COPD and moderate osteoarthritis. . .I reject this assessment as there is no evaluation to show such an extreme set of limitations should be given to the claimant.  She is clinically mild with a modest treatment regimen.  Her condition was noted to be under control with medication and CPAP. . .This assessment was given based on the claimant's subjective complaints and not objective medical evidence.

(Tr. at 25).  Accordingly, the ALJ did not reject the opinions of Dr. Tayengco in *toto;* instead, he rejected Dr. Tayengco's assessment of the severity of plaintiff's limitations, because it conflicted with the opinions of other physicians and the objective medical records and was not supported by a concurring medical evaluation.

"The ALJ holds the discretion to give less weight to the testimony of the treating physician in the face of persuasive contrary evidence."  *Mastro v. Apfel,* 270 F.3d 171, 178 (4th Cir. 2001), citing *Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1992).  In the instant case, persuasive evidence exists in the record upon which to conclude that plaintiff's limitations are not as extensive as they are described by Dr. Tayengco. The Commissioner, not the court, is charged with resolving conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990). The ALJ acknowledged that plaintiff's determinable impairments could reasonably be expected to produce the symptoms about which she complained, but he questioned her credibility concerning the intensity, persistence, and limitations of her symptoms.  (Tr. at 24-25).  Because Dr. Tayengco's RFC was based primarily upon the subjective complaints of plaintiff rather than the objective medical findings, the ALJ appropriately exercised his discretion to discount that RFC assessment.

From a review of the totality of the record, the Court concludes that the ALJ thoroughly considered the evidence and sufficiently documented his conclusions.  Relying upon the vocational expert, the ALJ determined that there were jobs that plaintiff could

perform at the medium, light and sedentary work levels. (Tr. At 26-27).  The Court finds

that the ALJ had substantial evidence to support this determination.

### VI.    Conclusion

After a careful consideration of the evidence of record, the Court finds that the

Commissioner's decision **IS** supported by substantial evidence.  Accordingly, by Judgment

Order entered this day, the final decision of the Commissioner is **AFFIRMED** and this

matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to transmit copies of this Order to all counsel of

record.

**ENTERED:**  November 10, 2010.

Cheryl A.  Eifert
United States Magistrate Judge